UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **GARRETT CONSTRUCTION CO.,** § | | |
|     Plaintiff § | | |
| VS. § | | |
| § | Civil No. CC-05-281 | |
| **DAVID J. KNOWLES** and § | | |
| **LARRY P. FITCH,** § | | |
|     Defendants § | | |

**Consolidated with**

| | | |
|---|---|---|
| **LARRY P. FITCH** and § | | |
| **DAVID J. KNOWLES,** § | | |
|     Plaintiffs § | | |
| § | | |
| VS. § | Civil No. CC-06-147 | |
| § | | |
| **VESSEL M/V ARLEEN GARRETT,** § | | |
| **COAST GUARD REGISTRATION** § | | |
| **NUMBER 567963,** *Its Engine, Tackle,* § | | |
| *Apparel, Etc., In Rem*, § | | |
|     Defendant § | | |

## MEMORANDUM OPINION AND ORDER

This case arises from an ownership dispute over the M/V ARLEEN GARRETT. Garrett Construction Co. ("Garrett"), resident in the Corpus Christi Division of this Court, currently has possession of the vessel. Larry Fitch, a citizen of Louisiana, claims to have an ownership interest in the vessel, asserts a maritime lien against it for his services, and sues to enforce a sales contract for the vessel. David Knowles, a citizen of Louisiana, asserts a maritime lien against the vessel for conducting a damage survey on the vessel.

1

This case involves two separate lawsuits which have been consolidated. Garrett originally filed a declaratory judgment action to invalidate the lien claims.[1] Fitch and Knowles subsequently filed suit to arrest the vessel and enforce their lien claims.[2] The Court consolidated these cases into Cause No. 2:06-cv-147, *Fitch, et al. v. M/V ARLEEN GARRETT*. The Court has jurisdiction over the parties and the subject matter of these suits pursuant to 28 U.S.C. §2201 and 28 U.S.C. §1333. For purposes of this opinion, the Court regards Garrett as Plaintiff and Fitch and Knowles as Defendants.

The parties tried this case without a jury. Having reviewed all evidence on record, the Court makes the following findings of fact and conclusions of law:

**1. Title**

Garrett has record title to the M/V ARLEEN GARRETT. A bill of sale of a vessel, accompanied by possession, is prima facie evidence of title. *Hozey v. Buchanan*, 41 U.S. 215 (1842). Garrett Construction Co. currently has possession of the vessel, and the Bill of Sale verifies that Marine Holdings, Inc. sold the vessel to Garrett Construction Co. in 1998. *See* Exhibit 7. There are two Certificates of Documentation in the record, which identify the owner of the vessel. 46 U.S.C. §12103. The first verifies that Marine Holdings, Inc. owned the vessel at the time of purchase, and the second demonstrates that Garrett Construction Co. is the current owner of the vessel. *See* Exhibit 2, 7.

---

[1] *See Garrett Construction Co. v. Knowles, et al.*, Cause No. 2:05-cv-281.

[2] *See Fitch, et al. v. M/V ARLEEN GARRETT*, Cause No. 2:06-cv-147.

There is no evidence that Fitch has an ownership interest in the vessel. In 1993, Peggy Chaisson, his ex-wife, acquired the vessel through a lease-purchase agreement with Richard "Dickie" Jones. Although Fitch managed and operated the boat on her behalf, he never owned the vessel. In 1995, Ms. Chaisson transferred ownership of the vessel to William "Bill" Smith, the owner of Marine Holdings, Inc. In 1998, Marine Holdings, Inc. sold the vessel to Garrett Construction Co. In 2004 and 2005, Fitch made four offers to buy the vessel from Garrett. These acts are inconsistent with Fitch's claim of ownership.

**2. Maritime Liens**

Fitch does not have a valid maritime lien against the vessel. The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). The lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for the debt or claim. *Id*. The perfection of a maritime lien does not require that a creditor record his lien, obtain possession of the vessel, or file a claim against the ship. *Bermuda Express, N.V. v. M/V/ Litsa (Ex. Laurie U)*, 872 F.2d 554, 557-58 (3d Cir. 1989). Rather, the lien attaches and is perfected when the underlying debt or claim arises. *Equilease*, 793 F.2d at 603.

Under the Federal Maritime Lien Act, a person is presumed to have a maritime lien on a vessel if he (1) provides necessaries (2) to the vessel (3) on the order of the owner or a person authorized by the owner. 46 U.S.C. §31342. "Necessaries" includes repairs, supplies,

towage, and the use of a dry dock or marine railway. 46 U.S.C. §31301(4). The term "necessaries" includes "most goods or services that are useful to the vessel, keep her out of danger and enable her to perform her particular function." *Trico Marine Operators, Inc. v. Falcon Drilling Co.*, 116 F.3d 159, 162 (5th Cir. 1997) (citing *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986)).

A person providing necessaries is not required to allege or prove that credit was given to the vessel. 46 U.S.C. §31342(a)(3). The Court must presume the supplier relied on the credit of the vessel. *Racal Survey U.S.A., Inc. v. M/V Count Fleet*, 231 F.3d 183, 189 (5th Cir. 2000). Nevertheless, the FMLA did not do away with "the idea of credit to the vessel being a prerequisite to a lien, and the principle that credit to the owner negates the lien." *Id*. The party attacking a maritime lien has the burden of overcoming the presumption by showing the creditor relied solely on the personal credit of the owner. *Id*. To meet this burden, evidence must be produced that would permit the inference that the supplier purposefully intended to forego the lien. *Id*.

If the party contesting the maritime lien presumption establishes that the creditor was a general agent of the owner, a presumption arises that the creditor looked solely to the credit of the owner. *First Nat. Bank of Jefferson Parish v. M/V Lightning Power*, 851 F.2d 1543, 1547 (5th Cir. 1988). The theory is that a general agent "acts not as a stranger relying on the security of the vessel but as an agent of the owner to whom he looks for payment." *Id*. Continuity of service and scope of authority are particularly relevant to classifying maritime agencies. The broader the delegated authority the more likely the agent is a general agent.

*Id.* A creditor may contest the basic facts giving rise to the general agency presumption or rebut the presumed fact by establishing that he nonetheless relied upon the security of the vessel. *Id.*

From 1995 to 1998, Fitch provided Port Captain services to the vessel. Fitch claims he is still owed $261,943.00 for these services, but the exact dates of his services are unknown. In the latter part of 1997, Fitch told Melvin Garrett that the boat "owes me money." There is no evidence that Fitch told Mr. Garrett what services he provided to the vessel or when he provided such services. On February 10, 1998, Garrett bought the vessel from Marine Holdings, Inc. "free and clear of all liens, mortgages and other encumbrances of any kind and nature..." On September 3, 1998, Fitch filed his notice of lien claim with the United States Coast Guard Office.

Although Fitch gave partial oral notice of his claim to Mr. Garrett, the evidence nevertheless demonstrates that Fitch was a general agent of Bill Smith and did not rely on the credit of the vessel when he performed his services as Port Captain. As Port Captain, Fitch maintained the vessel, hired crews to operate the vessel, monitored repairs to the vessel, and ensured the boat had supplies. He had broad authority to enter into agreements with other providers and to procure ship repairs. He was a shore-based employee who made sure the vessel was operating appropriately. In his sworn live testimony before the Court, Fitch testified, "I had all the authority, for everything."

5

As general agent of Mr. Smith, Fitch is presumed to have provided services on the credit of the owner, Mr. Smith. Fitch has failed to rebut this presumption. The Court acknowledges that Fitch's act of filing the lien claim is evidence that he relied on the credit of the vessel. However, the description of the lien claim shows that Fitch was relying on a business arrangement he had with Mr. Smith for compensation. Specifically, in 1995, Mr. Smith advised Fitch to file bankruptcy and transfer the boat to him [Smith]. In return, Mr. Smith agreed to pay off the debts owed by the boat, which included a $17,000.00 tax lien. When the bankruptcy ended, Mr. Smith would sell the boat to Fitch. In his notice of claim of lien, Fitch explains the boat was supposed to be sold to him in lieu of compensation:

> "For services as Port Captain. Agreement to receive the named vessel in lieu of compensation. Vessel sold and transferred to in the total value and amount of $640,000.00."

If Knowles has a valid maritime lien, it is barred by laches. Knowles is presumed to have a maritime lien because he provided "necessaries" to the vessel on the order of the owner. Garrett has failed to overcome this presumption. Mr. Smith, the owner of the vessel, hired Knowles to conduct a preliminary damage survey of the vessel after it had been involved in a collision. On March 8, 1997, Knowles began performing the survey, the purpose of which was to ascertain the nature and extent of the damage to the vessel and to recommend repairs.

A ship in need of repairs is liable *in rem* for the cost of a preliminary survey to determine the nature and extent of the repairs needed to make her seaworthy, when ordered by a person authorized to bind the ship. *The Susquehanna Kzczuk v. American Bureau of*

*Shipping*, 295 F. 322 (4th Cir. 1924). The Fifth Circuit has not specifically held that a damage survey constitutes a "necessary." However, there is a strong presumption in favor of maritime liens, and the Fifth Circuit has adopted a broad interpretation of "necessaries" to include services that enable a vessel to perform her function. As such, the Court finds the damage survey was necessary to enable the vessel to perform her function.

A maritime lien is not extinguished when the vessel to which it attaches is sold to a good faith purchaser for value; however, a maritime lien can be discharged under the doctrine of laches. *Equilease Corp.*, 793 F.2d at 602. Laches is an affirmative defense to a maritime lien and is a flexible measure of time within which a claim in admiralty must be asserted. *Florida Bahamas Lines, Limited v. Steel Barge Star 800 of Nassau*, 433 F.2d 1243, 1251 (5th Cir. 1970). The existence of laches is a factual question that requires the court to weigh the equities of each case. *Molnar v. Gulfcoast Transit Co.*, 371 F.2d 639, 640-641 (5th Cir. 1967). The crucial question is whether it would be inequitable because of the delay to enforce the claim. *Florida Bahamas Lines, Limited*, 433 F.2d at 1251.

Laches requires there be (1) an unreasonable delay by one party in the assertion of his remedy, and (2) the prejudice to another as a result of the delay. *Florida Bahamas Lines, Limited*, 433 F.2d at 1251. There is no fixed period of time that must elapse for a suit to be barred by the doctrine of laches. *The Key City*, 81 U.S. 653, 660 (1871); *McMahon v. Pan Am. World Airways, Inc.*, 297 F.2d 268, 269 (5th Cir. 1962). A court can consider the fact that a state statute bars the cause of action when ascertaining what might constitute unreasonable delay. *Caplicki v. S.S. Hoegh Silver Cloud*, 351 U.S. 525, 533 (1956);

7

*Goodwyn v. Dredge Ginger Ann*, 342 F.2d 197 (5th Cir. 1965); *McMahon*, 297 F.2d at 270.

On March 8, 1997, Knowles began conducting the damage survey of the vessel in Louisiana. Under Louisiana law, claims for wages, including professional fees, must be brought within three years. LA. CIV. CODE ANN. art. 3494 (1994). On June 26, 1998, Knowles filed his lien claim with the United States Coast Guard Office. Almost eight years later, on March 30, 2006, Knowles filed this lawsuit to enforce his lien claim, more than five years after the running of the Louisiana limitations statute. An eight year delay in arresting the vessel is unreasonable under the facts of this case. Knowles does not provide the Court any explanation for his delay. In fact, he testified that there was no particular reason he waited to file the lawsuit. There is no evidence that anything prevented him from bringing this action earlier.

Knowles's lien claim is prejudicial to Garrett because it encumbers the vessel's title and has prevented its sale to third parties. Garrett has received two offers to purchase the vessel. On August 1, 2005, Commander Marine, LLC offered to buy the vessel outright for $400,000.00. On October 10, 2006, the offer was withdrawn because Garrett did not have clear title to the vessel. On June 16, 2006, Breathwit Marine Contractors, Ltd. offered to buy the vessel outright for $500,000.00, subject to the condition that the vessel be free and clear of all liens.

### 3. Contract to Purchase Vessel

Fitch does not have a valid contract to purchase the vessel. Under Texas law, an enforceable contract is formed when an offer is made and accepted, when there is a meeting of the minds, and when the terms are sufficiently certain to define the parties' obligations. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App. – Austin 2007, pet. denied).

Fitch asks the Court to enforce the lease-purchase agreement dated March 29, 2005. *See* Exhibit 18. On March 29, 2005, Fitch sent a signed proposed lease-purchase agreement to Jon Garrett for his [Jon] signature. As part of the agreement, Fitch was supposed to make a $50,000.00 down payment. Jon Garrett did not sign the proposed agreement. In fact, on April 1, 2005, Jon Garrett requested that Fitch make a couple of changes to the agreement. Fitch testified that he made the requested changes and mailed the revised contract to Jon Garrett overnight via FedEx.

The Court finds Garrett never accepted Fitch's offer and there was no meeting of the minds. There is no admission from Garrett that it ever received the modified contract or a $50,000.00 check. There is no signed copy of the modified contract in the record, and there is no evidence of a $50,000.00 deposit.

The Court GRANTS a declaratory judgment that Garrett Construction Co. is the owner of the M/V ARLEEN GARRETT, a documented vessel, official number 567963, free and clear of all liens claimed by Defendants David Knowles and Larry Fitch. All relief

9

sought by Defendants Knowles and Fitch is DENIED. Garrett Construction Co. is awarded its costs.

Plaintiff provides no documentary evidence in support of its request for attorneys fees. Without such evidence, the Court is unable to evaluate Plaintiff's request. Plaintiff's request for attorneys fees is DENIED.

The Court finds there is no good cause to supplement the trial record. Defendants' motion to supplement the trial record is DENIED (D.E. 37).

ORDERED March 17, 2008.

*Hayden Head*
HAYDEN HEAD
CHIEF JUDGE